D. ROY SMITH *v.* CHARLES L. WETHERELL *& a.*

*Arthur E. Sewall* and *Thomas L. Cleaton* (by brief), for the plaintiff.

*Cooper & Hall* (by brief), for the defendants.

ALLEN, C. J.   I. The property was leased by the plaintiff and was subject to a mortgage.   During the term of the lease the lessor lost all title to the property through a foreclosure sale under the mortgage.   Prior to the sale the lessor assigned his rights and interest in the lease to a third party as security for a debt.   At the time of the sale the debt remained unpaid.   All rent up to the time of the assignment was paid.   The mortgagee bought the property at the foreclosure sale, and immediately afterwards made an agreement of sale with one of the lessees.

Under these facts the plaintiff's claim for rent is unfounded.   Any unpaid rent accruing after the assignment of his interest in the lease and to the date of the foreclosure sale is owed to the assignee, subject to a possible claim of the mortgagee to some part of it.   The plaintiff's debt to the assignee exceeds the amount of unpaid rent which accrued after the assignment.

The obligation to pay rent under the lease terminated when the lessor's ownership was lost by a paramount title.   The lessee who bought the property from the purchaser at the foreclosure sale, in yielding to the paramount title, did not dispute or act in denial of the lessor's title, although he was not evicted from his possession. *Nashua &c. Co.* v. *Company*, 74 N. H. 511.   No finding was made that the negotiations with the purchaser commenced before the foreclosure sale or that at the time of the sale there was any understanding between the purchaser and the lessee for the latter to acquire the property.   It follows that the claim that the lessee was a party in interest with the purchaser at the sale at the time of it must fail.

II. The plaintiff claims damages for loss of his title through the defendants' failure after the assignment of the lease to observe its provision relating to the application of rent to meet the payments of interest and principal on the mortgage debt.   The provision is in this language: "... it is agreed that ... [the lessees] shall make payments on ... [the] mortgage as same fall due and any and all payments so made shall be credited on rent payments ...."

The provision is construed to be designed to secure the lessees in their possession of the property.   By having the right to apply the rent to meet the requirements of the mortgage debt they obtained protection against loss of their possessory interest in the property.   The lessor, it is assumed, covenanted for their lawful possession of the property during its term, and their right to pay rent to the mortgagee helped to secure that possession.   There is nothing to indicate that it made any real difference to the lessor whether he received all

the rent and himself made the payments due on the mortgage debt or whether they made the payments as a credit on the rent. The only benefit to the lessor was the convenient arrangements by which the lessees were to act as his agent in making the payments.

The use of the word "shall" instead of "may" is inconclusive. In respect to statutes, "The cases in which it is held that these words [shall and may] should be regarded as convertible, are numerous, and they contain much learning. The sum of it, however, is that the natural meaning of these words is not always conclusive as to the construction of statutes in which they are employed, and that one should be regarded as having the usual meaning of the other when that is required to give effect to other language of the statute or to carry out the purpose of the legislature as that purpose may appear from a general view of the statute under construction." *State* v. *Budd*, 65 Oh. St., 1, 5. The reasoning is equally pertinent in the construction of contracts and other private writings. What meaning is conveyed by the language used, is the inquiry with reference to them as well as to public acts. The literal meaning of words or phrases is not adopted when apparent intention is thereby defeated. If they are susceptible of a different, although unusual meaning, they are thus to be read to accomplish the disclosed purpose of the writing.

Non-payment of rent to the mortgagee was thus the same in legal effect as non-payment to the lessor. Damages for not paying money due and owing a plaintiff are limited to the money thus due, with interest. Williston, Contracts, *s.* 1410; Sedgwick, Damages, (9th *ed.*), *s.* 622b; 8 R. C. L. 463. The agreement being no more than a reservation of right to pay a part of the rent money towards the discharge of the mortgage obligations, there is no liability for omission to exercise the right.

Even if the provision were construed to require payments of rent to the mortgagee, there is no evidence to indicate that the parties had it in mind or would naturally contemplate that the lessees were under responsibility to avoid a default of the mortgage. They did not assume liability for the mortgage debt, and the agreement was not intended to give the lessor security or indemnity. Its purpose was to protect the lessees, and not to provide for the discharge of the lessor's obligations. Foreclosure was to be guarded against, but for their, and not for his, benefit. His duty to secure the lessees in their possession was unaffected. Any enforcement of a possessory lien by others was an outcome which he covenanted would not occur. The lessees, not assuming the mortgage debt, but only agreeing to

make payments of rent towards it, had only their own security in consideration as the occasion for the provision. No understanding existed that the rents were the only source from which the mortgage debt would be paid. The provision implied no insurance on which the lessor might rely against a default of the mortgage. It fortified the lessees in their rights and was an incidental convenience to the lessor, but that its breach would lead to a foreclosure of the mortgage was not a result fairly to be contemplated. In the light of the attendant circumstances, the lessor's own obligations, and the purpose of the provision it was not reasonable for the lessor to consider that the lessees would be accountable for a loss of the property if they failed to observe the provision. The loss of the property is therefore not a consequence of the breach of the provision for which the law allows damages.

While damages for breach of a promise to pay another's debt may include consequential losses in addition to the amount of the debt, such losses are allowed only when special facts exist which show that the parties would reasonably contemplate them if the promise should be broken. The usual cases of a promise to pay a debt of the promisee are where the promisor has funds of the promisee for the purpose or has assumed the debt as his own.

While the value of the lease to the lessor was the value of performance by the lessees (Williston, Contracts, *s.* 1339), yet to hold a defendant for unusual damages which will or may follow a breach of the contract by him, he must be notified, before entering into the contract, of facts indicating such damages (*Ib.*, *s.* 1347). No notice to such effect has here been found.

"But if the land owner justly relies upon his agent, ... and the land is lost without his knowledge, and solely through the fault of the agent, then the agent will be liable for the value of the land ... lost." *Blood* v. *Wilkins*, 43 Ia. 565. Here the lessor knew of the mortgagee's purpose to foreclose some two months before the foreclosure sale, and it is assumed that he had formal notice of the time and place of the sale. Aware of the breach, he made no demand for performance and took no action to avert foreclosure save to make an unjustified demand on the assignee to whom he had transferred his interest in the lease. He may not thereby necessarily be chargeable for failure to avoid the consequences of the breach, but he may not claim successfully that he was misled into an expectation that there would be no foreclosure.

If these views of the provision were not taken, even then the lessor

has not made out a case of consequential damage. At the time of the foreclosure his equity in the property had been conveyed in execution proceedings on judgments of other creditors against him. The year for redemption therefrom had not expired at that time, but it does not appear that he would have redeemed had there been no foreclosure. A second mortgage on the property, although given to defeat creditors, was valid against the lessor. It is stated to secure a debt substantial in amount and remains undischarged. It would be wholly imaginative to attribute to the loss of the property any real loss of value. No evidence is presented from which the lessor's equity may be found to have had any value whatever. The only evidence is that without including the foreclosed mortgage the liens to which the property was subject exceeded in their aggregate amount the value the property had at the time of the foreclosure sale.

Specific reference to the plaintiff's exceptions is not useful. Assuming that the rulings to which they were taken were all erroneous, yet the views here taken come to the result reached by the trial court. The defendants were entitled to judgment without regard to the reasons there assigned.

*Judgment affirmed.*

All concurred.

---

On Rehearing. After the foregoing opinion was filed the plaintiff moved for a rehearing.

*Arthur E. Sewall* and *Thomas L. Cleaton,* by brief, for the plaintiff.

*Cooper & Hall,* by brief, opposed.

Allen, C. J. One ground for the motion is this. One of the lessees bought the property from the mortgagee after the latter acquired full title to it through the foreclosure sale. The referee made no finding whether this lessee was a party in interest with the mortgagee before the sale. The plaintiff asserts, however, that the evidence demonstrates the interest.

This position cannot be upheld. On the contrary the evidence tends only to show that no such interest existed. Not until after the foreclosure sale was any contract made for the lessee to buy. If there were negotiations between him and the mortgagee before the sale, they resulted in no arrangement creating obligations on the part of either. The lessee's interest to become the owner and notice to the mortgagee of such interest did not make him a party in privity

with the mortgagee in the latter's purchase at the foreclosure sale.

The referee has found that after the sale the mortgagee's agent consulted the lessee and a price for the latter to pay was finally agreed upon. The only conclusion from this finding is that no relations of a legal or equitable character between the lessee and the mortgagee existed at the time of the sale. The mortgagee was at full liberty to sell to others or not to sell at all, and the lessee was equally free either not to buy or to say for what price and on what terms he would buy.

It therefore becomes unnecessary to consider how far the lessor's acknowledgment in the lease that he owned subject to the primary lien of the mortgage bars him from claiming the benefit of an estoppel on the lessee to deny his full title.

The plaintiff now presents evidence that the payments of rent to the mortgagee were a required duty of the lessees under the lease. Conceding the duty, it was owed to the lessor, and not to the mortgagee. Security for the latter in addition to the mortgage was not an object of the requirement, and it was not intended to be an assignment of the rent to the mortgagee. Nor was there any assumption by the lessees of the lessor's liability for the mortgage debt, by which the debt became theirs in any respect. The mortgagee was not in contemplation as a beneficiary of the direction to pay the rent to it, and could therefore claim no legal or equitable right to the rent by virtue of the direction. The provision was one which secured no interest in anyone other than the parties to the lease.

The lessor had the right to revoke the direction at any time, and this he did when he assigned his rights in the lease to secure certain creditors. By its terms the assignment transferred the lease with the premises it described and with all "covenants, ... rights, ... discretions and powers therein contained" which the lessor might exercise with respect to the property and lease, subject to the rights of the lessees. The lessor is in no position to take advantage of the order to pay rent to the mortgagee subsequent to the assignment when the assignment in obvious implication demanded that further observance of the order cease. The assignment reserved no rights of the mortgagee to the rent because none had been granted or created.

It is argued that the cases are in point which hold that a tenant violating his covenant to pay taxes can acquire no valid title against his landlord from a purchaser at a sale of the property for non-payment of the taxes. The argument fails since here the lessor discharged the lessees from the duty further to pay rent to the mortgagee.

The further contention is made that the lessor's assignment of the

rent was only partial and the lessees' covenant to pay rent created a direct contractual relation with the lessor unaffected by the assignment. The theory seems to be advanced that because the rent was not paid to the assignee, it became due the lessor. Such a view must be rejected. The assignment vested in the assignee the right to receive the rent until its debt should be paid. Until the right was discharged the lessor had no valid claim to the rent. It might be discharged by payment or by its surrender. No discharge has been shown. So far as the record discloses, the lessees remain liable to the assignee for the rent accrued during the period dating from the assignment to the foreclosure sale. Failure to pay the assignee the rent, although a breach of the lessees' covenant with the lessor, did not revest the right to the rent in the lessor, and no claim of damage by reason of the failure is presented in the case. The lessor relies upon failure to pay rent to the mortgagee as the cause of the foreclosure sale.

As the lessor's assignment of the rent operated to terminate the lessees' obligation to pay it to the mortgagee, no estoppel arises against them on the ground that the lessor relied upon such payment after the assignment.

*Former result affirmed.*

All concurred.